IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                               :         CASE NO. 12-02997

INTERNATIONAL HOME PRODUCTS INC.   :

                                   :          CHAPTER 11

     Debtor                      :

_____ :

FIRST BANK PUERTO RICO INC.       :

     Plaintiff                  :         ADVERSARY NO. 12-00279

vs.                             :

ANDREW BERT FOTI ET ALS.        :

     Defendants              :

_____ :

OPINION AND ORDER

On May 24, 2012 International Home Products Inc. (hereinafter referred to as the "Debtor") and Andrew Bert Foti and his wife Eva Judith Pagan Burgos (hereinafter referred to as the "Defendants" or "Mr. Foti" and "Mrs. Pagan") removed two (2) state court civil actions currently pending before the Commonwealth of Puerto Rico Court of First Instance, San Juan Section pursuant to Fed. R. Bankr. P. 9027 and 28 U.S.C. §§1452(a), 1334 and 157(a). Defendants filed their Answer to Complaints and Counterclaim on June 8, 2012 replying to the two (2) state court complaints and including a counterclaim requesting to extend the protections of the automatic stay to Debtor's president and treasurer and to enjoin the proceedings currently pending against him. First Bank Puerto Rico Inc. (hereinafter referred to as "First Bank") filed separate motions to remand the two (2) state court cases on June 25, 2012. The Defendants filed their Opposition to Remand on October 12, 2012. First Bank also filed a motion to dismiss Defendants' Counterclaim on July 6, 2012. The Defendants filed their opposition to First Bank's motion to dismiss their counterclaim on August 27, 2012. For the reasons stated herein, First Bank's motion to dismiss the counterclaim for injunctive relief under 11 U.S.C. §105(a) to extend the automatic stay to non-debtors is granted and First Bank's motion to remand the state court case is granted.

Facts and Procedural Background

*Bankruptcy Petitions*

International Home Products Inc. (hereinafter referred to as "IHP") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on April 19, 2012 (Case No. 12-02997). IHP included First Bank as a secured creditor in Schedule D (Creditors Holding Secured Claims). IHP included First Bank in its Schedule H (Codebtors) as a creditor which has the following codebtors for certain debts; (i) Marian Foti; (ii) A. Bert Foti; (iii) Eva Pagan; (iv) Health Distillers; and (v) Milagros Burgos (Case No. 12-02997, Docket No. 1).

On May 3, 2012, a cash collateral hearing was held in the IHP case, in which the court held that; "First Bank validly renewed its UCC filing and financing statements and the Debtor could not ex-parte terminate the same. Therefore, First Bank has a valid lien over Debtor's cash collateral. This holding will apply only to the cash collateral not to the lease payments" (Case No. 12-02997, Docket No. 53). On May 15, 2012 the Court entered a written Order further explaining its May 3, 2012 bench ruling whereby it held that First Bank properly perfected its security interests with the 2011 Financing Statements in conformity with 19 L.P.R.A. §2152(2)(c), and that IHP's attempt to terminate First Bank's security interest by filing the Termination Statements on February 16, 2012 had no effect because the termination statements failed to comply with 19 L.P.R.A. §2154, and IHP was not authorized by First Bank to file the same. The court found that First Bank, as a secured creditor, may exercise its rights and proceed according to the documents and the applicable law. The court further held that the Order had prospective effect starting on May 3, 2012 (Case No. 12-02997, Docket No. 80). On May 25, 2012, IHP filed the Notice of Appeal of the court's May 15, 2012 Order whereby it held that First Bank had properly perfected its security interest with the 2011 Financing statements (Case No. 12-02997, Docket No. 110).

Health Distillers International Inc. (hereinafter referred to as "HDI") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 7, 2012 (Case No. 12-03574). HDI included First Bank in its Schedule D (Creditors Holding Secured Claims) for a line of credit incurred in the years 2005-2011 secured by accounts receivables and inventory in the amount of $2,921,349 which HDI listed as contingent (Case No. 12-03574). HDI included First Bank in its Schedule H

(Codebtors) as the creditor which has the following codebtors for certain debts; (i) Marian Foti; (ii) A. Bert Foti; (iii) Eva Pagan; and (iv) International Home Products (Case No. 12-03574, Docket No. 1).

On June 1, 2012, the Court granted the request for the administrative consolidation of the International Home Products, Inc. case (Case No. 12-02997) and of the Health Distillers International, Inc. case (Case No. 12-03574) (Case No. 12-02997, Docket No. 123); (Case No. 12-03574, Docket No. 26); and on July 2, 2012, the court granted the request for substantive consolidation of the International Home Products, Inc. case and the Health Distillers International, Inc. case (Case No. 12-02997, Docket No. 185) (Case No. 12-03574, Docket No. 58).

*Adversary Proceeding*

On May 24, 2012, IHP and Defendants Andrew Bert Foti and Eva Judith Pagan Burgos filed a Notice of Removal regarding two (2) state court civil actions pending before the Commonwealth of Puerto Rico Court of First Instance, San Juan Section, pursuant to Fed. R. Bankr. P. 9027 and 28 U.S.C. §§1452(a), 1334 and 157(a). IHP and Defendants Mr. Foti and Mrs. Pagan allege the following: (i) that each of the civil actions was initiated after the commencement of the Chapter 11 case; (ii) each of the civil actions is a debt collection action regarding debts incurred by Debtor, or on its behalf, for which Debtor is liable and for which Debtor intends to provide treatment and payment under its Chapter 11 plan; (iii) most claims and causes of actions have a clear and direct impact on property of the estate under 11 U.S.C. §541; and (iv) removal of each claim and cause of action of the civil actions is authorized under Fed. R. Bankr. P. 9027 and under 28 U.S.C. §§1452, 1334 and 157 and by the General Order of the District Court of Puerto Rico.

On June 8, 2012, Defendants Mr. Foti and Mrs. Pagan and their conjugal partnership answered the two (2) complaints originally filed in state court, in the case of First Bank-Puerto Rico v. Andrew Bert Foti, Eva Judith Pagan, and the conjugal partnership, case No. KAC2012-0444 and First Bank-Puerto Rico v. [Health] Distillers International, Inc.; Andrew Bert Foti; Eva Judith Pagan Burgos; and the conjugal partnership; the Estate of Andrew Anthony Foti composed of Linda Foti; Melody Foti; Andrew Bert Foti; Drew Straus Foti; Lisa Straus Foti; Petrina Marie Foti; Mark Andrew Foti; Peter Evan Foti; Brett Corwin; Bruce Corwin; Lexona Corwin aka Lexi Broadbent; Linne Corwin, Eva

3

Marie Foti; Andrea Foti, Andrew Bert Foti, Jr., Melissa Corwin; Bertram Foti James; and Marian Labue Foti aka Marian Ellen Foti, case No. KAC2012-0446. In addition, as part to the answer to each of the complaints, the Defendant Mr. Foti plead a counterclaim to request that the provisions of the automatic stay be made extensive to Debtor's President and Treasurer, and to enjoin the proceedings currently pending against him based on the following allegations; (i) a court may extend the automatic stay provisions against non-bankrupt parties when there are "unusual circumstances" which have been defined by case law (citing A.H. Robbins Co. v. Piccinin, 788 F. 2d 994 (4th Cir. 1986) such as; (a) "when there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant;" and (b) "where the third party non-debtor 'is so essential to the debtor's efforts at reorganization' that the stay must apply to protect debtor's efforts to reorganize; (ii) "[i]n the instant case, his identity with the Debtor and his responsibility for formulating and perhaps even partially funding a plan of reorganization results in Mr. Foti qualifying for the protection of the automatic stay under either category of exception;" (iii) Mr. Foti is Debtor's president, treasurer, majority stockholder, chief executive and the sole post-petition lender to Debtor; (iv) Mr. Foti manages the day-to-day operations of Debtor and is primarily responsible for devising and implementing Debtor's plan of reorganization due to his knowledge of the local marketplace, rental agreements, consumer buying patterns and other information which is unique; (v) Defendant Mr. Foti and his wife, Mrs. Pagan are the only source of post-petition financing of the Debtor and as of this date they have already advanced $200,000 in post-petition financing. Moreover they anticipate providing further post-petition financing to Debtor either through an extension of credit, providing collateral for post-petition financing, or through a capital contribution; (vi) as part of the extension of the credit facilities, First Bank requested personal guarantees from Defendants; (vii) First Bank has pursued two (2) collection actions against Mr. Foti and his wife demanding that they pay Debtor's (IHP) pre-petition debt. First Bank has also has moved for pre-judgment attachment of Defendants' assets, and foreclosure on several mortgages; (viii) "[l]itigation against Defendants on claims for which the Debtor is primarily liable, will create waste in the form of litigation costs and disincentive to fund the plan if they are forced to transfer their funds to First Bank who has the guaranty, rather than to the estate for the benefit of all creditors, including First Bank;" (ix) "...any funds expended

against the collection, would be deadweight loss, should the debtor's plan pay the creditor in full, or if the guaranty is subject to defenses, such as the invalidity of the underlying debt, which would be litigated in the Debtor's Chapter 11 case; (x) if Mr. Foti and his wife's assets are garnished by First Bank, Debtor's reorganization will be in tremendous threat and danger because it would diminish the estate of a potential and important source of capital necessary for the plan of reorganization; (xi) in the instant case, "Mr. Foti is in charge of the day-to-day operations of Debtor– just as the principals in [Lazarus Burman Assocs. v. National Westminster Bank USA (In re Lazarus Burman Assocs.), 161 B.R. 891 (Bankr. E.D.N.Y. 1993)] were. Again, just as the principals in Lazarus were responsible for obtaining capital to reorganize the debtor, here Mr. Foti is primarily responsible for obtaining the necessary capital for reorganization has already provided, and very likely will provide, capital to the Debtor himself (either in the form of a contribution or loan); (xii) "in In re Lazarus, as here, the founding principals of the debtor had signed personal guarantees with some of the creditors of the debtor. The principals were in control of the debtor's operations and intended to contribute or solicit funding for the debtor entity in order to facilitate the reorganization. Id at 895-96;" and (xiii) "Despite these personal guarantees, and despite agreeing to a term waiving 'any defense,' the Court held in Lazarus that the protections of the automatic stay covered the principals because 'any adverse action against [the principal founders] would impede the non-debtor from injecting funds into the debtor and detract from the invaluable time and attention the non-debtor third party would otherwise devote to the reorganization effort. [In re Lazarus Burman Assocs, 161 B.R. at 899]" (Docket No. 4). The Defendants included as part of the counterclaim a second cause of action alleging that the two (2) state court collection actions should be stayed, pending the adjudication of the controversy surrounding First Bank's secured status as to whether it properly perfected its security interests with the filing of the  2011 financing statements (Docket No. 4).

On June 25, 2012, First Bank filed a motion to remand the state court case, First Bank Puerto Rico, Inc. v. Andrew Bert Foti, Eva Judith Pagan Burgos and the Foti-Pagan conjugal partnership, case No. KAC2012-0444 (Docket No. 7). On April 3, 2013, the parties submitted a joint stipulation for the entry of partial judgment dismissing removed state case number KAC2012-0444. The request was granted on April 10, 2013. The court approved stipulation dismissing case number KAC2012-

0444 moots any issue relative to having removed two separate state court actions in one adversary proceeding before the bankruptcy court, as well as First Bank's motions to dismiss.

On June 25, 2012 First Bank filed a motion to remand the state court case, First Bank-Puerto Rico, Inc. v. Health Distillers International, Inc.; Andrew Bert Foti, Eva Judith Pagan, the Foti-Pagan conjugal partnership; the estate of Andrew Anthony Foti et als., case No. KAC2012-0446 premised upon the following; (i) the state court action removed by the Debtor and Mr. Foti and Mrs. Pagan is a claim against Debtor's guarantors for breach of contract, collection of monies, and foreclosure of guarantees against Mr. Foti, Mrs. Pagan, and HDI[1]; (ii) the claim is based solely on state law and does not arise under Title 11 or in a case under Title 11 nor is it related to a case under Title 11; (iii) the claims asserted by First Bank against the Defendants in the state court action fails to meet the jurisdictional requirements of 28 U.S.C. §1334; (iv) this particular state court action is a claim for breach of contract, collection of monies and foreclosure of guarantees between two (2) non-debtor parties that arise under Puerto Rico law; (v) none of the claims asserted by First Bank fall within the list of core proceedings under 28 U.S.C. §157(b)(2); (vi) "...claims such as the state court action filed by a non-debtor against non-debtors involving guarantees are not claims that by their nature could only arise in bankruptcy court;" (vii) "...the state court action is not 'related to' Debtor's bankruptcy proceedings. Upon a reading of the state court action's pleadings and the guarantee agreements it is clear that the Bank's claims in state court against the guarantors is independent of any claims the Bank has against Debtor. Accordingly, the Bank's efforts to recover the guaranteed obligations stand on their own and do not directly impact the Debtor;" (viii) on December 3, 2009, First Bank, IHP and HDI executed an "Amended and Restated Credit Agreement" where First Bank granted IHP and HDI credit facilities in the aggregate amount of $38,289,099.64 (consisting of a revolving credit facility to IHP and HDI in the principal amount of $26,000,000 and a term loan credit facility to IHP in the amount of $12,289,099.64); (ix) IHP and HDI's obligation under the credit agreement were secured by personal guarantees subscribed by IHP, HDI and Andrew and Anthony Foti; now the estate of

---

[1] First Bank clarifies that it originally filed the state court claim against HDI as co-debtor of IHP. HDI was not served process of summons since it filed a voluntary Chapter 11 petition on May 7, 2012 (Case No. 12-03574).

Andrew Anthony Foti and his spouse, Marian Labue- Foti; (x) "[t]he Defendants and the Foti Estate jointly and severally guaranteed payment to the Bank of all debts and liabilities, present and future, direct or indirect, absolute or contingent, matured or not, at any time owing or remaining unpaid by Debtor [IHP] and HDI to the Bank;" (xi) on April 4, 2012, First Bank sent a formal notice of default to IHP, HDI and the guarantors, by which it notified them of the existing defaults, declared its obligations under the credit agreement terminated, and declared due and payable the entire unpaid principal amount of the loans and all other amounts payable under the credit agreement; and (xii) the requirements for mandatory abstention under 28 U.S.C. §1334(c)(2) are satisfied in the instant case (Docket No. 8).

On July 6, 2012, First Bank filed a motion to dismiss Defendants' counterclaim arguing that; (i) the counterclaim warrants dismissal under Fed. R. Civ. P. 12(b)(6) for failing to state claims upon which relief can be granted; (ii) in the instant case there are no "unusual circumstances" that merit extending the provisions of the automatic stay to non-debtor third parties premised upon the following allegations; (1) there is a lack of identity between IHP and Mr. Foti due to the following; (a) "...it is clear from the Bank's claims in state court against the Defendants are separate from any claims the Bank has against Debtor. Under the guarantee agreements, the Defendants are jointly and severally liable to the Bank for Debtor's noncompliance with the obligations under the credit agreement, and the Bank may file a claim against Defendants without including Debtor as a defendant to the complaint. Thus, the Bank's efforts to recover from the guaranteed obligations stand on their own and do not directly impact Debtor;" (b) the state court action is based on Defendant's noncompliance with the terms of the loan agreement granted by the Bank to them personally. Defendants are the only parties responsible under the loan agreement since Debtor is not a party or guarantor under the same; and (c) the real estate properties that were given in guaranty under the loan agreement are property of the Defendants and a third party; (iii) the state court actions will not have an adverse impact on Debtor's reorganization process due to the following; (a) Mr. Foti has advanced up to date, $400,000 in loans in order for Debtor to obtain financing from other third parties such as Preferred Credit, Inc ("Preferred"); (b) Preferred will purchase from Debtor consumer sales contracts that will in turn increase Debtor's liquidity and Debtor will be able "to manage and preserve the assets of its

bankruptcy estate, and to increase the likelihood of a successful reorganization" (Case No. 12-02997, Docket No. 139); (c) Debtor is currently engaged in negotiations with American Enterprises International, Inc., to provide Debtor with an additional source of funds through the purchase of the consumer sales contracts; (d) "...the financial cost to Mr. Foti personally in defending the state court actions will not have an adverse effect on Debtor's reorganization given the existence of post-petition financing obtained from third parties, other than Mr. Foti, that will provide Debtor the funds for a reorganization plan;" (e) "...if the only source of post-petition financing is from Mr. Foti, as alleged by Defendants, and no other investor or bank is willing to provide financing to Debtor, it casts doubt on the future prospects and viability of Debtor's operations and its ability to satisfy post-petition obligations;" (f) "...Defendants' allegations that the time demands of the state court actions will affect Mr. Foti's ability to assist Debtor in its reorganization efforts is without merit. Defendants fail to state neither the amount of time Mr. Foti dedicates to Debtor's operations and possible reorganization nor the amount of time Mr. Foti has diverted from Debtor to deal with the state court actions; (g) Defendants fail to provide the legal basis for the extension of the automatic stay provisions to Mrs. Pagan and the conjugal partnership; and (iv) Debtor and Defendants fail to meet their burden for injunctive relief under 11 U.S.C. §105, given that they fail to address the requirements for granting injunctive relief and they fail to satisfy the same (Docket No. 14). On August 27, 2012, Mr. Foti, Mrs. Pagan and the conjugal partnership filed their opposition to motion to dismiss Defendants' counterclaim alleging; (i) the same arguments supporting their position that the provisions of the automatic stay should be made extensive to Mr. Foti, Mrs. Pagan and the conjugal partnership since First Bank failed to address the majority of their pertinent well-plead allegations; (ii) "[t]he fact that First Bank may file a separate complaint against the counterclaimants without including Debtor is not inconsistent with the requirement of identity between the Debtor and a third party defendant when analyzing whether to extend the protections of the automatic stay. In fact, if First Bank was not able to follow a claim against a third party defendant independently from Debtor, it would be unnecessary to extend the protection of the automatic stay to any third party defendant since the automatic stay of Debtor would bar First Bank from following such action; (iii) the loan agreement supports counterclaimants position regarding the identity between them and the Debtor because it "...clearly

states in its first page that the proceeds of said loan 'are intended to be used by the Borrower to capitalize International Home Products, Inc. and fund new installment contracts;'" (iv) the factual allegations Mr. Foti and Mrs. Pagan presented in the counterclaim go way beyond the "short and plain statements" required by Fed. R. Civ. P. 8(a)(2) satisfying the elements of the counterclaim's request for the extension of the protection of the automatic stay for Mr. Foti and Mrs. Pagan and thus, denying the averments contained in the counterclaim is insufficient to warrant the dismissal of the counterclaim under Fed. R. Civ. P. 12 (b)(6); and (v) the factual similarities between the instant case and In re Lazarus Burman Assocs., 161 B.R. 891, warrant that the same treatment be afforded to Mr. Foti and Mrs. Pagan and their conjugal partnership (Docket No. 28).

On October 12, 2012, the Defendants/Counter-claimants filed their opposition to remand contending the following: (i) both of the removed civil actions are collection actions to collect from Mr. Foti and Mrs. Pagan the loans and advances made by First Bank to IHP and HDI which are non-core proceedings "related to cases under Title 11;" (ii) First Bank stopped collecting from funds (from the personal account of Mr. Foti) that have been available to pay the loan related to the state court case KAC2012-0444, thus "...performance under the loan by defendants Foti–as far as the payment thereof–was current until First Bank unilaterally stopped withdrawing the funds which were and are available;" (iii) the state court action in case KAC2012-0444 "...is really a collection of a portion of the claim that First Bank holds in this Chapter 11 case from co-defendants Foti as virtual guarantors thereof. At the same time, it is an indirect attack to IHP, which seriously jeopardizes its ability to operate, or withstand the bank's mounting pressure, while negotiating the terms of a settlement;" (iv)  the resolution of the two state court civil actions should not be divorced from Adversary Proceeding 12-00282, an action filed by IHP "...in which the fate of some of the Foti defendants' affirmative defenses will be decided;" and (v) First Bank's request for mandatory abstention as to civil action KAC2012-0446, fails to meet four (4) of the (5) factors required under 28 U.S.C. §1334(c)(2) (Docket No. 44).

The pending motions in this case only concern state court case KAC2012-0446 as issues in state case number KAC2012-0444 have been dismissed.  The first issue which must be addressed is whether the court should remand the case to the state court from which it was removed. The issue

hinges on whether the bankruptcy court hasjurisdiction pursuant to 28 U.S.C. §1334(b) over the state court action, and, thus, that removal under 28 U.S.C. §1452(a) was proper. If the court determines that it has jurisdiction over the state court action, then it must determine whether grounds exist under 28 U.S.C. 1452(b) to remand the lawsuit to the state court. Section 1452(b) of title 28 allows a court to which a claim or cause of action has been removed to "remand such claim or cause of action on any equitable ground." 28 U.S.C. §1452(b). First Bank has also requested the court to take into account the mandatory and discretionary abstention provisions of 28 U.S.C. §1334(c). The second issue the court needs to address is whether the provisions of the automatic stay should be made extensive to Mr. Foti, Mrs. Pagan and the conjugal partnership comprised between them.

Applicable Law and Analysis

Bankruptcy jurisdiction is governed principally by statute; namely by 28 U.S.C. §1334. Section 1334(b) of title 28 provides in pertinent part, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" 28 U.S.C. §1334(b). Section §157(a) of Title 28 states that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. §157(a). Section 157(b)(1) of title 28 provides that, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate order and judgments, subject to review under section 158 of this title." 28 U.S.C. §157(b)(1). The United States District court for the District of Puerto Rico, by a standing Order dated July 19, 1984, has referred to the bankruptcy court pursuant to 28 U.S.C. §157(a) all cases in which jurisdiction is premised under title 11 of the United States Code. See L.Cv.R. Rule 83K(a) (D.P.R. 2009).

Section 1452(a) of title 28 provides that; "[a] party may remove a claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. §1452(a). Fed. R. Bankr. P. 9027details

10

the procedure to be followed in filing a notice of removal and the procedure to be followed after an action is removed. Pursuant to Section 1452(a), a party may remove any claim relating to a civil proceeding to federal court if the court has bankruptcy jurisdiction over such claim in conformity with 28 U.S.C. §1334.

The first step is to determine whether the bankruptcy court has subject matter jurisdiction over the removed action. See Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara County Care Consortium), 223 B.R. 40, 44 (B.A.P. 1st Cir. 1998); C&A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 90 (D.P.R. 2007). Actions "arising under" title 11 and "arising in" a case under title 11 are referred to as "core" proceedings an are specifically referenced in 28 U.S.C. §157(b)(2). See Longchamps Elec., Inc. v. Rothenberg (In re Wrenn Assocs.), 2004 BNH 18 (Bankr. D.N.H. 2004). A lawsuit is an action "arising under" title 11 if it pertains to a cause of action created or determined by statutory provision of the Bankruptcy Code. See River Valley Country Day Sch. v. Evarts (In re Evarts), 2006 BNH 11 (Bankr. D.N.H. 2006) citing New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Equip. & Marine, Inc.), 292 F. 3d 61, 68 (1st Cir, 2002); In re Santa Clara County Care Consortium, 223 B.R. 40, 43 n. 2 (citing Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201 B.R. 1, 4 (Bankr. D. Me. 1996); Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991)(cited in Port Auth. of New York and New Jersey v. CCI-Bowers Co., 1992 U.S. Dist. Lexis 9206., No. 91-5681 (CSF), 1992 WL164441, at *3). A lawsuit is considered an action "arising in" a case under title 11 if it would have no existence outside of bankruptcy even if it is not based on any right expressly created by title 11. See In re Evarts, 2006 BNH 11 citing In re Middlesex Equip. & Marine, Inc., 292 F. 3d at 68; In re Santa Clara County Care Consortium, 223 B.R at 45 (quoting Pacor, Inc. v. Higgins, 743 F. 2d 984, 993 (3d. Cir. 1984)); Drexel Burnham, 130 B.R. at 407 (cited in CCI-Bowers Co., 1992 U.S. Dist. Lexis 9206, 1992 WL 16444, at *3).

Bankruptcy judges may also hear what are considered "non core" or "related to" proceedings in conformity with 28 U.S.C. §157(c)(1), that provides: "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district

court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. §157(c)(1). Pursuant to 28 U.S.C. §157(c)(2), a bankruptcy judge with the consent of all the parties may hear and determine a non-core proceeding related to a case under title 11 and enter appropriate orders and judgments. 28 U.S.C. §157(c)(2). The court notes that First Bank has not consented to this court entering a final judgment on the issues before it. "The statutory grant of 'related to' jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." Boston v Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.) 410 F. 3d 100, 105 (1st Cir. 2005) citing Pacor, Inc. v. Higgins, 743 F. 2d 984, 994 (3d Cir. 1984). The First Circuit adopted what is referred to as the "Pacor test" to determine whether an action is "related to" bankruptcy; that is; "...whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F. 2d at 994, overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995). Thus, "[a]n action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. In order for a civil proceeding to be "related to" bankruptcy it does not necessarily have to be against the debtor or against the debtor's property. See Pacor, Inc. v. Higgins, 743 F. 2d at 994. Whether a particular action is "related to" bankruptcy must be determined on a case-by-case basis. See New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133, 137 (D.N.H. 2009) In re Boston Reg'l Med. Ctr., Inc., 410 F. 3d at 107. "The language of the jurisdictional statute, 28 U.S.C. §1334, is protean, and what is 'related to' a proceeding under title 11 in one context may be unrelated in another."In re Boston Reg'l Med. Ctr., Inc., 410 F. 3d at 107.

If there is no subject matter jurisdiction then the court must dismiss or remand the state court actions pursuant to 28 U.S.C. §1447(c). See New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133 (D.N.H. 2009) citing Marotta Gund Budd & Dzera v. Costa, 340 B.R. 661, 663

n.2 (D.N.H. 2006) ("If subject matter jurisdiction is lacking, there is no power to do anything with the case except dismiss or remand."); Work/Family Directions v. Childrem's Discovery Ctrs. (In re Santa Clara County Care Consortium), 223 B.R. 40, 44 (B.A.P. 1st Cir. 1998)("However, if the bankruptcy court does not have subject matter jurisdiction over the removed proceeding then it may not hear the matter and the case should be remanded pursuant to 28 U.S.C. §1447(c), which provides that if at any time before final judgment it appears that the district court lack subject matter jurisdiction, the case shall be remanded."). However, if a court determines that it has jurisdiction Section 1452(b) of title 28 permits the court to remand removed actions "on any equitable ground." 28 U.S.C. §1452(b).

In the instant case, the parties agree that the state court actions that was removed involve state law claims such as breach of contract, collection of monies, foreclosure of real estate property between two non-debtor parties that arise under Puerto Rico law, and foreclosure of guarantees. Mr. Foti, Mrs. Pagan and IHP's arguments in their Opposition to Remand contend that both of the removed state court actions involve various matters upon which this court has jurisdiction pursuant to 28 U.S.C. §1334(b) and as such, "[s]ome of said matters are deemed core proceedings, others non-core, and still others present hybrid core/non-core issues." (Docket No. 44, pg. 3, paragraphs 3& 4). Defendants and IHP also contend that, "[t]he removed [c]ivil [a]ctions are both geared toward collection from the Foti defendants loans and advances made by First Bank to the debtor corporation. As discussed below, these actions are classic examples of non-core proceedings upon which the Court has been vested with jurisdiction, as they are 'related to cases under Title 11.' 28 U.S.C. §1334(b)." (Docket No. 44, pgs. 4 & 5, paragraph #12).

The jurisdictional inquiry regarding the removed state court case comes at the pleadings stage, thus the court may consider the allegations in the pleadings as any other materials before it. See New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133, 137 (Bankr. D.N.H. 2009) citing Aguilar v. ICE, 510 F. 3d 1, 8 (1st Cir. 2007).

The pending removed state court action, First Bank-Puerto Rico, Inc. v. Health Distillers International, Inc.; Andrew Bert Foti, Eva Judith Pagan, the Foti-Pagan conjugal partnership; the estate of Andrew Anthony Foti et als., case No. KAC2012-0446, is for breach of contract, collection

of monies, foreclosure of collaterals and foreclosure of guarantees. This state court action was filed by First Bank on May 1, 2012.  First Bank, in footnote 1 of the state court complaint discloses that on April 19, 2012, IHP filed a voluntary bankruptcy petition and thus a cause of action may not be commenced against IHP due to the provisions of the automatic stay pursuant to 11 U.S.C. §362. Since IHP and HDI are joint and several debtors under the obligations incurred with First Bank, this action is addressed uniquely against HDI and the Guarantors (meaning Mr. Foti, Mrs. Pagan, Mrs. Marian Labue Foti and the members of the Andrew Anthony Foti Estate) of both IHP and HDI. Subsequently, HDI also filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 7, 2012, thus it is also protected by the provisions of the automatic stay.  First Bank in foot note 1 of its motion to remand clarifies that it had originally filed the state court action against HDI as co-debtor of Debtor but it did not serve service of process upon HDI because it had filed for bankruptcy on May 7, 2012 (Docket No. 8, pg. 2, fn. 1).

The state court complaint alleges that on January 16, 2001, HDI, IHP and First Bank executed a contract titled, "First Credit Agreement" by which First Bank provided HDI and IHP a loan in the amount of $22.5 million, consisting of a revolving line of credit in the amount of $15 million and a secure term loan in favor of IHP in the amount of $7.5 million. This First Credit Agreement was amended by HDI, IHP and First Bank on several occasions as detailed in the state court complaint. The last amendment to the Credit Agreement was executed between HDI, IHP and First Bank on December 3, 2009 and the same was titled, "Amended and Restated Credit Agreement" by which First Bank provided to HDI and IHP a loan for the principal sum of $38,289,099.64 which consisted of $26 million in a line of credit and $12,289,099.64 of the term loan.  The line of credit was given to provide financing for the sale and inventory contracts and to provide working capital.  The term loan was provided for the partial refinancing of an existing debt of IHP. The Amended and Restated Credit Agreement was secured by the assets of HDI, IHP, several mortgage notes and the corresponding mortgages, the personal guarantees of Mr. Foti, Mrs. Pagan, Mr. Andrew Anthony Foti, now the Estate of Andrew Anthony Foti, Mrs. Marian Labue Foti, and the members of the Andrew Anthony Foti Estate. On September 1, 2010, First Bank notified IHP and HDI regarding several default events under the credit agreement and informed them of First Bank's right to exercise other

14

remedies should the same not be cured. IHP and HDI defaulted on their obligations under the loan documents, including but not limited to the default on the payment of the loan. First Bank on April 4, 2012, sent IHP, HDI and the guarantors a notification of default notifying them of the default incurred by IHP and HDI and informed them that the principal amount of the loan was due and payable, plus interests and any other amounts owed under the credit agreement, including the penalties for advanced payments. According to First Bank, the total amount owed (including principal, accrued interests, late fees, and penalties for advances) under the loan documents as of the date the state court complaint was filed (May 1, 2012) is $40,992,608.02 which consists of $38,527,343.40 in principal, interests in the amount of $1,482,410.84 (as of April 30, 2012) plus $982,853.78 for other amounts owed under the credit agreement and attorney's fees, previously agreed upon by the parties in the IHP and HDI mortgages. Mr. Foti and Mrs. Pagan admit that the, "[g]uarantors subscribed in favor of First Bank documents regarding unlimited and continual guaranties, for which they are responsible jointly and severally in their personal character for the HDI and IHP debts and obligations as demanded in the complaint." (Docket Nos., 1, Exhibit 4, pg. 11, paragraph 39, Docket No. 8, Exhibits 1 & 2) Docket No. 4, pg. 12, line item 39, Docket No. 36, Exhibit 4, pg. 13, paragraph 39).

The removed state court action is for a pre-petition breach of contract action which was filed on May 1, 2012, subsequent to IHP's filing for bankruptcy on April 19, 2012 but prior to HDI's filing for bankruptcy on May 7, 2012. This state court lawsuit does not "arise under" title 11 as it does not involve a cause of action created or determined by a statutory provision of the Bankruptcy Code. This lawsuit does not "arise in" a case under title 11 because it can exist outside of bankruptcy. The nature of this particular lawsuit pertains to state law claims for breach of a credit agreement, collection of monies due to the payment defaults by IHP and HDI and foreclosure of certain personal guarantees. IHP and HDI's obligation under the credit agreement was secured by the personal guarantees[2] of

---

[2] Both documents titled "Personal Guarantee" of Mr. Andrew Bert Foti and Mrs. Eva Judith Pagan Burgos (dated December 21, 2000) and Mr. Andrew Anthony Foti and Mrs. Marian Labue Foti (dated December 14, 2000) provide that; "In consideration of First Bank Puerto Rico (herein called the "Bank") agreeing to deal with or to continue to deal with International Home Products, Inc. and Health Distillers International, Inc. (herein collectively called the "Customer") the undersigned and each of them, if more than one, hereby jointly and severally guarantees

payment to the Bank of all debts and liabilities, present or future, direct or indirect, absolute or contingent, matured or not, at any time owing by the Customer to the Bank or remaining unpaid by the Customer to the Bank, whether arising from dealings between the Bank and the Customer or from other dealings or proceedings by which the Bank may be or become in any manner whatever a creditor of the Customer, and wherever incurred, and whether incurred by the Customer alone or with another or others and whether as principal or surety, including all interest, commissions, legal and other costs, charges and expenses (such debts and liabilities being herein called the "guaranteed liabilities"), the liability of each of the undersigned, if more than one, hereunder being Unlimited.

And the undersigned and each of them, if more than one, hereby jointly and severally agrees with the Bank as follows:

1. In this guarantee the word "Guarantor" shall mean the undersigned and, if there is more than one guarantor, it shall mean each of them.

2. This guarantee shall be a continuing guarantee of all the guaranteed liabilities and shall apply to and secure any ultimate balance due or remaining unpaid to the Bank; and this guarantee shall not be considered as wholly or partially satisfied by the payment or liquidation at any time of any sum of money for the time being due or remaining unpaid to the Bank.

3. The Bank shall not be bound to exhaust its recourse against its Customer or others or any securities or other guarantees it may at any time hold before being entitled to payment from the Guarantor.

4. The Guarantor waives demand for payment.

5. Upon default in payment of any sum owing by the Customer to the Bank at any time, the Bank may treat all guaranteed liabilities as due and payable and may forthwith collect from the Guarantor the total amount hereby guaranteed and may apply the sum so collected upon the guaranteed liabilities or may place it to the credit of a special account. A written statement of a Manager or Acting Manager of a branch of the Bank at which an account of the Customer is kept or   of a General Manager of the Bank as to the amount remaining unpaid to the Bank at any time by the Customer shall, if agreed to by the Customer, be conclusive evidence and shall, in any event, be prima facie evidence against the Guarantor as to the amount remaining unpaid to the Bank at such time by the Customer.

6. This guarantee shall be in addition to and not in substitution for any other guarantees or other securities which the Bank may now or hereafter hold in respect of the guaranteed liabilities and the Bank shall be under no obligation to marshal in favor of the Guarantor any other guarantees or other securities or any moneys or other assets which the Bank may be entitled to receive or may have a claim upon, and no loss of or in respect of or unenforceability of any other guarantees or other securities which the Bank may now or hereafter hold in respect of the guaranteed liabilities, whether occasioned by the fault of the Bank or otherwise, shall in any way limit or lessen the Guarantor's liability.

7. Without prejudice to or in any way limiting or lessening the Guarantor's liability and without obtaining the consent of or giving notice to the Guarantor, the Bank may discontinue, reduce, increase or otherwise vary the credit of the Customer, may grant time, renewals, extensions, indulgences, releases and discharges to and accept compositions from or otherwise deal with the Customer and others, including the Guarantor and any other guarantor as the Bank may see fit, and the Bank may take, abstain from taking or perfecting, vary, exchange, renew, discharge, give up, realize on or otherwise deal with securities and guarantees in such manner as the Bank may see fit, and the Bank may apply all moneys received from the Customer or others or from securities or guarantees upon such parts of the guaranteed liabilities as the Bank may see fit and change any such application in whole or in part from time to time.

8.  Until repayment in full of all the guaranteed liabilities, all dividends, compositions, proceeds of securities, securities valued or payments received by the Bank from the Customer or others or from estates in respect of the guaranteed liabilities shall be regarded for all purposes as payments in gross without any right on the part of the Guarantor to claim the benefit thereof in reduction of the liability under this guarantee, and the Guarantor shall not claim any set-off or counterclaim against the Customer in respect of any liability of the Customer to the Guarantor, claim or prove in the bankruptcy or insolvency of the Customer in competition with the Bank or have any right to be subrogated to the Bank.

9. This guarantee shall not be discharged or otherwise affected by the death or loss of capacity of the

16

Andrew Anthony Foti, now the Estate of Andrew Anthony Foti, Marian Labue Foti, Mr. Andrew Bert Foti and Mrs. Pagan. First Bank seeks to foreclose on the personal guarantees as IHP and HDI have filed for bankruptcy and are protected by the provisions of the automatic stay.

---

Customer, by any change in the name of the Customer, or in the membership of the Customer, if a partnership, or in the objects, capital structure or constitution of the Customer, if a corporation, or by the sale of the Customer's business or any part thereof or by the Customer being amalgamated with a corporation, but shall, notwithstanding any such event, continue to apply to all guaranteed liabilities whether theretofore or thereafter incurred; and in the case of a change in the membership of a Customer which is a partnership or in the case of the Customer being amalgamated with a corporation, this guarantee shall apply to the liabilities of the resulting partnership or corporation, and the term "Customer" shall include such resulting corporation.

10. All advances, renewals and credits made or granted by the Bank purportedly to or for the Customer after the death, loss of capacity, bankruptcy or insolvency of the Customer, but before the Bank has received notice thereof shall be deemed to form part of the guaranteed liabilities; and all advances, renewals and credits obtained from the Bank purportedly by or on behalf of the Customer shall be deemed to form part of the guaranteed liabilities, notwithstanding any lack or limitation of power, incapacity or disability of the Customer or of directors, partners or agents thereof, or that the Customer may not be a legal or suable entity, or any irregularity, defect or informality in the obtaining of such advances, renewals or credits, whether or not the Bank had knowledge thereof.

11. All debts and liabilities, present and future, of the Customer to the Guarantor are hereby assigned to the Bank and postponed to the guaranteed liabilities, and all moneys received by the Guarantor in respect thereof shall be received in trust for the Bank and forthwith upon receipt shall be paid over to the Bank, the whole without in any way lessening or limiting the liability of the Guarantor under this guarantee.

12. The undersigned or any of them, if more than one, or his or their executors or administrators, by giving notice in writing to the branch of the Bank at which the main account of the Customer is kept, may terminate his or their further liability under this guarantee in respect of liabilities of the Customer incurred or arising after the date of receipt of such notice, but not in respect of any guaranteed liabilities incurred or arising on or before the date of receipt of such notice, even though not then matured; provided that notwithstanding receipt of any such notice the Bank may fulfil any requirements of the Customer based on agreements express or implied made on or before the date of receipt of such notice and any resulting liabilities shall be covered by this guarantee; and provided further that in the event of the termination of this guarantee as to one or more of the undersigned, if more than one, it shall remain a continuing guarantee as to the other or others of the undersigned.

13. This guarantee embodies all the agreements between the parties hereto relative to the guarantee, assignment and postponement and none of the parties shall be bound in any representation or promise made by any person relative thereto which is not embodied herein, and it is specifically agreed that the Bank shall not be bound by any representations or promises made by the Customer to the Guarantor. Possession of this instrument by the Bank shall be conclusive evidence against the Guarantor that the instrument was not delivered in escrow or pursuant to any agreement that it should not be effective until any condition precedent or subsequent has been complied with and this guarantee shall be operative and binding notwithstanding the non-execution thereof by any proposed signatory.

14. This guarantee shall be governed in all respects by the laws of the Commonwealth of Puerto Rico.

15. This guarantee shall not be discharged or affected by the death of the undersigned in respect of any guaranteed liabilities incurred or arising on or before the date of such death; and if there is more than one signatory to this guarantee, the death of any of them shall have no effect on the obligations of the others hereunder. This guarantee shall enure to the benefit of and be binding upon the Bank, its successors and assigns, and the Guarantor, his heirs, executors, administrators, successors and assigns." (Docket No. 8, Exhibits 1 & 2).

*Application of the Pacor Test to Debtor's Guarantors*

The application of the Pacor test to determine whether actions against guarantors or sureties of a debtor's obligations are "related to" a case under Title 11 has been inconsistent. See In re Santa Clara County Care Consortium, 223 B.R. at 49. "In attempting to resolve the jurisdiction question in this case the court has looked primarily to those cases involving suits or third-party claims against guarantors or sureties of a debtor's obligations which were brought by a creditor or some party other than the trustee or the debtor. Even with this narrowed scope of consideration the cases are not entirely consistent." Id at 48-49 citing Burns v. First Citizens Bank & Trust Co. (In re Rainbow Sec.), 173 B.R. 508, 511 (Bankr. M.D.N.C. 1994).

The courts that have concluded that the actions against guarantors or sureties of a debtor's obligations are "related to" the debtor's bankruptcy proceedings and its administration base their holdings upon the reasoning that, "even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status, vis-a-vis, other creditors, and that the administration of the estate therefore depends upon the outcome of that litigation." In re DAK Mfg. Corp., 73 B.R. 921 citing Pacor, Inc. v. Higgins, 743 F. 2d at 995; See In re Rainbow Sec., 173 B.R. at 512 ("...it is entirely appropriate for the court to consider the fact that the effect of the third-party claim might be to substitute the Flowers [guarantors of the obligations of the debtor] as creditors in place of First Citizens [creditor bank] and that this involves a substitution or change of creditors might very well affect the dividend to be paid to other creditors  which obviously affects the administration of the estate"); See also; TD Bank, N.A. v. Sewall, 419 B.R. 103 (D. Me. 2009); Seybolt v. Bio-Energy of Lincoln, 38 B.R. 123 (Bankr. D. Mass. 1984).

The First Circuit Bankruptcy Appellate Panel in In re Santa Clara County Care Consortium specifically distinguished the same from In re Rainbow Sec., by stating: "[t]he outcome of the state court proceeding will not have a substantial and direct financial impact upon the reorganization proceeding; rather it will merely determine the validity and enforceability of a guaranty between two creditors of the debtor. As opposed to the situation in Rainbow Sec., the substitution of creditors in the case before the panel will not affect the debt structure of the debtor. The resolution of the state

18

court proceeding will not directly affect the claims litigation in the bankruptcy case; rather, it is only a precursor to a potential claim by Work/Family against CDC and is insufficient to confer related-to jurisdiction upon the bankruptcy court." In re Santa Clara County Care Consortium, 223 B.R. at 49.

Mr. Foti and Mrs. Pagan argue that this particular removed state court action is "related to" IHP and HDI bankruptcy based upon the following: (i) "[t]he case of In re DAK Mfg. Corp., [73 B.R. 917 (Bankr. D.N.J. 1987)] is particularly representative, and on point. There, a plaintiff removed a state court action to consolidate it with the pending bankruptcy action pursuant to 28 U.S.C. §1452. The court concluded that the state court action by a creditor against a guarantor of debtor would necessarily affect that creditor's status. Thus, because the state court action would have an effect on the bankruptcy estate, it was related to the Title 11 case, and removal was found proper;" (ii) "[t]he existence of jurisdiction is quite clear. Such conclusion is bolstered by the fact that the defenses being raised to the collection actions include the release of the guarantor's liability produced by the bank's bad faith or negligent actions with regard to the principal–DIP herein. The issues raised include core and non-core matters, and are currently before this court in Adv. Proc. 12-282, filed by debtor;" and (iii) [i]f judicial economy is to be served, the resolution of the [c]ivil [a]ctions should not be divorced from Adversary Proceeding 12-282, an action filed by debtor in which the fate of some of the Foti defendants' affirmative defenses will be decided." (Docket No. 44, pgs. 10-11).

First Bank argues that this particular state court action is not "related to" IHP and HDI's bankruptcy upon the following: (i) "[u]pon a reading of the [s]tate [c]ourt [a]ction's pleadings and the guarantee agreements it is clear that the Bank's claims in state court against the guarantors is independent of any claims the Bank has against the Debtor. Accordingly, the Bank's efforts to recover the guaranteed obligations stand on their own and do not directly impact the Debtor;" and (ii) "[a]side from asserting that the 'claims and causes of action have a clear and direct impact on property of the estate' in the Notice of Removal, Debtor and the Defendants fail to state the underlying facts on which they rely on to make such assertion. See Notice of Removal at ¶ 8. This by itself is not enough to grant the Court subject matter jurisdiction over the [s]tate [c]ourt [a]ction." (Docket No. 8, pgs. 5-6).

After perusing the personal guarantees provided to First Bank, the court notes that paragraph

19

8 of both personal guarantees provides the following:

> "Until repayment in full of all the guaranteed liabilities, all dividends, compositions, proceeds of securities, securities valued or payments received by the Bank from the Customer or others or from estates in respect of the guaranteed liabilities shall be regarded for all purposes as payments in gross without any right on the part of the Guarantor to claim the benefit thereof in reduction of the liability under this guarantee, and the Guarantor shall not claim any set-off or counterclaim against the Customer in respect of any liability of the Customer to the Guarantor, claim or prove in the bankruptcy or insolvency of the Customer in competition with the Bank or have any right to be subrogated to the Bank." (Docket No. 8, Exhibits 1 & 2).

The personal guarantee document identifies the term Customer as International Home Products, Inc. and Health Distillers International, Inc., the term Bank is identified as First Bank Puerto Rico and the term Guarantor is defined as the "undersigned," that is, the personal guarantors. The court finds that pursuant to paragraph 8 of the personal guarantee documents, the guarantors; namely, Mr. Andrew Bert Foti, Mrs. Eva Judith Pagan Burgos, the Estate of Mr. Andrew Anthony Foti and Mrs. Marian Labue Foti expressly waived their rights to claim the reduction of the liability under the personal guarantee, and any claim, set-off or counterclaim against IHP and HDI regarding any liability of HDI and IHP to the guarantors. In addition, the guarantors waived the right to compete in any bankruptcy or insolvency proceedings with First Bank or have any right to be subrogated to First Bank. Thus, this court concludes that First Bank's action to enforce the personal guarantee agreements is not "related to" the bankruptcy proceedings or administration of IHP and HDI because it will not affect the administration of the bankruptcy estate because the guarantors of IHP and HDI's obligations have waived their rights to claim for indemnity and to substitute First Bank as a creditor. Consequently, the guarantors' waiver of these rights has no repercussions upon the dividend that may be paid to the other creditors. The outcome of the proceeding involving the guarantor has no effect on the administration of the estate.

In view of the foregoing, the court finds that it has no jurisdiction pursuant to 28 U.S.C. §1334(b) over this particular state court action and thus the same must be remanded in conformity with 11 U.S.C. §1447(c).

*Extension of the Automatic Stay to Non- Debtors*

"A bankruptcy court, in analyzing whether to extend the protection of the automatic stay to non-debtors, must determine if the requirements of both 11 U.S.C. §§105(a), 362(a) are satisfied in order to grant a preliminary injunction extending the provisions of §362(a) to non-debtors." In re

R&G Fin. Corp., 441 B.R. 401, 408 (Bankr. D.P.R. 2010). This court in the case of In re Bora Bora Inc., 424 B.R. 17, 25 (Bankr. D.P.R. 2010) concluded that a request to extend the provisions of the automatic stay to a non-debtor party is an action for injunctive relief and as such must be initiated as an adversary proceeding in conformity with Fed. R. Bankr. P. 7001(7); See also; Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 580 (B.A.P. 1st Cir. 2012)("Although typically called an extension of the automatic stay to non-debtor parties, these are in fact injunctions issued by a bankruptcy court under §105(a), after determining that the situation requires it to protect the interests of a bankruptcy estate. Id. (citing Patton v. Bearden, 8 F. 3d at 349). 'A request for extension of the automatic stay provisions of [§] 362(a) to a non[-]debtor constitutes an action for injunctive relief and should be initiated by adversary proceeding.' In re R&G Fin. Corp., 441 B.R. at 407 (citing In re Bora Bora, 424 B.R. at 24-25)"). As part of its legal analysis to support this specific legal conclusion the court stated in In re Bora Bora, Inc.;

> "A request for injunctive relief must be brought by adversary proceeding. Fed. R. Bankr. P. 7001(7); Cincom, 398 B.R. at 227 citing In re Swallen's Inc., 205 B.R. 879, 880 (Bankr. S.D. Ohio 1997)(injunctive relief was denied for failure to request it through adversary proceeding); In re Nasco P.R., Inc., 117 B.R. 35, 38 (Bankr. D.P.R. 1990)("A party wising to invoke the Court's injunctive power under Section 105(a) must file an adversary proceeding...and must follow the traditional standards for the issuance of an injunction."). While it is true that 11 U.S.C. §105(a) gives the bankruptcy courts broad power to issue any order that is "necessary or appropriate" to the reorganization effort, 'this broad authority does not allow the bankruptcy court to apply a less stringent standard for granting injunctive relief for the benefit of non-debtor defendants than is traditionally required for the issuance of any injunction.' Supermercado Gamboa, 68 B.R. at 232-233 citing Matter of Electronic Theatre Restaurants Corp., 53 B.R. 458 (N.D. Ohio 1985); A.H. Robbins, 788 F. 2d at 1008; Philadelphia Newspapers, 407 B.R. at 616; Codfish, 97 B.R. at 135).

> The broad injunctive powers under 11 U.S.C. §105(a) should be used sparingly. In re Lazarus Burman Assoc.; 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); In re Codfish, 97 B.R. 132 (Bankr. D.P.R. 1988); In re Criadores de Yabucoa, Inc., 75 B.R. 96 (Bankr. D.P.R. 1987). Thus, a preliminary injunction is an extraordinary and drastic remedy which should only be granted when the movant has carried its burden through clear and convincing evidence. Philadelphia Newspapers, 407. B.R. at 616; Cincom, 398 B.R. at 227." In re Bora Bora Inc., 424 B.R. at 24-25.

This court in In re Bora Bora, Inc., further stated the following regarding a request for injunctive relief pursuant to 11 U.S.C. §105(a);

> "Section 105(a) of the Bankruptcy Code provides the court with the authority to exercise its equitable powers when necessary or appropriate to facilitate the implementation of other provisions of the Bankruptcy Code. 11 U.S.C. §105(a). '[A]lthough §105(a) does not itself create a private right of action a court may invoke §105(a) if the equitable remedy itself is

21

demonstrably necessary to preserve a right elsewhere provided in the Code.' In re Nosek, 544 F. 3d 34, 43 (1st Cir. 2008)(citations omitted).  However, §105(a) may not be invoked 'where the result of its application would be inconsistent with any other Code provision or it would alter other substantive rights set forth in the Code. Id. 'The issuance of an injunction that restrains creditors from enforcing their claims against nondebtors in nonbankruptcy ...is an exception to the general principle that to enjoy the benefits of bankruptcy a recipient needs to suffer the burdens.'" In re Saxby's Cofee Worldwide, LLC, 44- B.R. 369, 2009 Bankr. LEXIS 3848, 2009 WL 4730238 at *5 (Bankr. E.D. Pa.)(citation omitted).

The First Circuit has established the four (4) standard factors a movant must satisfy to obtain injunctive relief under 11 U.S.C. §105(a) as follows: "(1) that the debtor would suffer irreparable injury if the injunction were not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) that the debtor has exhibited a likelihood of success on the merits; (4) that the public interest will not be adversely affected by the granting of the injunction." In re Bora Bora, Inc., 424 B.R. at 25 citing In re Codfish, 97 B.R. 132, 135 (Bankr. D.P.R. 1998) citing In re Supermercado Gamboa, Inc., 68 B.R. 230, 232 (Bankr. D.P.R. 1986); In re Lazarus Burman Assocs., 161 B.R. at 191; In re R&G Fin. Corp., 414 B.R. 401, 410 (Bankr. D.P.R. 2010). "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for preliminary injunction." In re R&G Fin. Corp., 414 B.R. at 410 citing 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §2949 at 214.

In the instant case, the Defendants failed to follow the appropriate procedural mechanism established in Fed. R. Bankr. P. 7001(7) to request an extension of the automatic stay to a non-debtor.  The Defendants requested the extension of the automatic stay through a counterclaim in the removed state court actions. Morever, Mr. Foti and Mrs. Pagan first address the four standard factors in their opposition to First Bank's motion to dismiss the counterclaim by referencing the findings of the court in the case of In re Lazarus Burman Assocs. and stating that the same are very similar to the plead facts of the counterclaim.  The Defendants state the following regarding the four standard factors;

"Based on those findings, which are very similar to the well-plead facts of the counterclaim, the Court in In re Lazarus, concluded that the third party defendants had satisfied the necessary elements for the issuance of injunctive relief. Specifically, that Court concluded that: '[i]rreparable harm or injury to the Debtor's reorganization efforts will be sustained by the Debtors, if the continuation of proceedings against the Principals is not stayed. First, the Principals' time and energy would be distracted both from the Debtors' daily business affairs and from Debtors' progressing toward a plan of reorganization.' [In re

Lazarus Burman Assocs.,]161 B.R. at 901.

It also concluded that the Debtor was substantially more likely to reorganize as a result of the third party defendants' participation and contributions. Since, 'likelihood of success' has been defined, for purposes of an injunction in a bankruptcy case, 'as the probability of a successful plan of reorganization' they had established that element for the injunction.

The '[r]elative [h]arm' element was also met in In re Lazarus Burman Assocs., since, as in the above captioned case, the issuance of the injunction would not invalidate the bank's rights but merely delay their enforcement.

Finally, the Court in In re Lazarus [Burman Assocs.,] concluded that the public interest was best serve by promoting a successful reorganization. As in the present case, a successful reorganization would be best serve[d] i[f] counterclaimant 'continues to work toward the eventual goal of successful reorganization.' In re Lazarus Burman Assocs., 161 B.R. at 901.

The well-plead fact[s] contained in the counterclaim are virtually identical to the facts found by the Court in In re Lazarus [Burman Assocs.,] therefore, Mr. and Mrs. Foti and their conjugal partnership is entitled to the same protection afforded to the principals in said case" (Docket No. 28, pg. 11).

This court in In re Bora Bora, Inc. delineated what the term "irreparable injury" entails under the first prong of the preliminary injunction test; namely;

"'[i]rreparable injury in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy.' Rio Grande Community Health Center Inc. v. Rullan, 397 F. 3d 56 (1st Cir. 2005). To establish irreparable harm the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F. 3d 12, 15 (1st Cir. 1996). 'If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel.' Id. For example 'harm to goodwill, like harm to reputation, is the type of harm not readily measurable of fully compensable in money damages and for that reason, more likely to be found 'irreparable.' K-Mart Corp. v. Oriental Plaza, Inc., 875 F. 2d 907, 915 (1st Cir. 1989). The irreparable harm must be 'neither remote nor speculative, but actual and imminent.' In re Dunes Hotel Associates, 1997 WL 33344279 *4 (Bankr. D.S.C. 1997), citing Dan River Inc. v. Icahn, 701 F. 2d 278 (4th Cir. 1983). 'Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough.' Cunningham v. Adams, 808 F. 2d 815, 821 (11th Cir. 1987)." In re Bora Bora, Inc., 424 B.R. at 26.

Fed. R. Civ. P. 13(a) and (b) made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7013, divide counterclaims into two (2) categories; compulsory and permissive counterclaims. A counterclaim is designated as compulsory or permissive depending on its relationship to the opposing party's claim. See 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §1409 at 44. A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A) & (B).

Fed. R. Civ. P. 13(b) provides that a party may assert as a counterclaim against an opposing party, "any claim that is not compulsory." Fed. R. Civ. P. 13(b). "Although this definition is not very informative, there is little need for greater precision because Rule 13(a) and Rue 13(b), when read together, embrace any claim a defending party may have against an opponent." Id. §1420 at 184. Fed. R. Civ. P. 13(b) fosters the parties to "assert their independent and unrelated counterclaims in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits." Id. §1420 at 186. The court finds that in this case, neither the compulsory or the permissive counterclaim are applicable because the proper procedural mechanism to request an extension of the automatic stay to non-debtor is through a separate action for injunctive relief to request the extension of the automatic stay to non-debtors. Notwithstanding, the request also fails on the merits.

The Defendants mainly argue that the Debtors' would suffer "irreparable harm or injury" in the reorganization process if the continuation of proceedings against Mr. Foti and Mrs. Pagan is not stayed because Mr. Foti's time and energy would be distracted from the Debtors' daily business operations and from the Debtors' progressing towards a plan of reorganization (Docket No. 28, pg. 11).

The Defendants argue that the action will divert Mr. Foti's attention from the business and in assisting in the Debtors' reorganization process. However, this court finds that the Defendants failed to identify with specificity the extent of which or the specific effect this distraction would have on the Debtors' reorganization process. Unlike the instant case, in the case of In re Lazarus Burman Assocs., 161 B.R. at 897, the court made a finding that if the state court actions were not stayed, the time the principals would spent on the reorganization process and in the operation of their businesses would be substantially diminished because they would be required to examine files, financial records, and many other documents which would require their assistance in such preparations and that the debtors' operations would be disrupted by the state court action. This court also finds that the Defendants' argument is flawed because they requested the removal of the state court actions (not the stay of the same); meaning that Mr. Foti's attention from the business and in assisting the Debtor's reorganization process would be diverted but rather than in the state court in the bankruptcy court.

Moreover, the Debtor IHP filed an adversary proceeding on May 30, 2012 against First Bank (Case No. 12-02997; Adversary Proceeding No. 12-00282) which includes nine causes of action all of which could possibly cause Mr. Foti's time (attention) to be diverted from the Debtors' operations and reorganization process. Lastly, the Debtors' Consolidated Disclosure Statement and the Plan of Reorganization were filed on September 28, 2012 (Docket Nos. 283 & 284) and the proposed Plan of Reorganization was subsequently amended on March 20, 2013 (Docket No. 417).

This court finds that Mr. Foti and Mrs. Pagan have failed to establish that the Debtors would suffer irreparable injury if the state court collection action against them is allowed to proceed. This court concludes that it does not need to discuss the remaining three (3) factors of the injunctive relief test since Mr. Foti and Mrs. Pagan have failed to establish the first prong. Thus, Mr. Foti and Mrs. Pagan request for injunctive relief must be denied.

The scope of the automatic stay is broad, it stays action only against the "debtor," and does not extend to protect "sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the...debtor." In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009). "The practice of indemnifying corporate officers and directors is common, A.H. Robins Co., Inc. v. Piccinin, *supra* at page 1007 fn. 13, and is not by itself sufficient to warrant that automatic stay provisions of 11 U.S.C. §362(a) be extended under 11 U.S.C. §105(a) to officers who act as guarantors to a debtor corporation." In re Codfish Corp., 97 B.R. 132, 135 (Bankr. D.P.R. 1988). Courts have extended the provisions of the automatic stay to non-debtor third parties when "unusual circumstances" are present; consisting of; (i) "the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor;" or (ii) "the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." In re Philadelphia Newspapers, LLC, 407 B.R. at 616.

Mr. Foti and Mrs. Pagan, pursuant to a counterclaim of the removed state court action, request that the automatic stay provisions be extensive to Debtors' president, treasurer, majority stockholder and chief executive of the Debtors. Mr. Foti contends that the automatic stay provisions should be made extensive to him based upon the following arguments: (i) Mr. Foti manages the day-to-day operations of the Debtor; (ii) he is primarily responsible for devising and implementing a plan

25

of reorganization for the Debtor; (iii) "[i] addition to loaning money to Debtor and an anticipated desire to loan additional capital to Debtor to help fund its reorganization, Mr. Defendant Foti has extended personal guarantees to several of Debtor's creditors." Mr. Foti has already advanced to Debtor over $200,000 in post-petition loans; (iv) "[l]itigation against Defendants on claims for which the Debtor is primarily liable, will create waste in the form of litigation costs and disincentive to fund the plan if they are forced to transfer their funds to First Bank who has the guaranty, rather than to the estate for the benefit of all creditors, including First Bank;" (v) "...any funds expended defending against the collection, would be deadweight loss, should the debtor's plan pay the creditor in full, or if the guaranty is subject to defenses, such as the invalidity of the underlying debt, which would be litigated in the Debtor's Chapter 11 case;" (vi) "Defendant Foti and his wife are the only sources for the post-petition financing of the Debtor. As of this date, Defendant and his wife commenced financing [D]ebtors' operations. It is their intention to assist the Debtors financially in the benefit of all other creditors. If Mr. Foti and his wife's assets are garnished by the Plaintiff, the reorganization of the Debtor will be in tremendous threat and danger;" (vii) "...the time necessary to defend the collection actions, in consulting with lawyers and considering strategy, is time that Mr. Foti does not have to commit to assisting in the [D]ebtor's reorganization;" (viii) "Debtor fundamentally needs Defendant Foti's funding, expertise and devoted attention in order to implement a successful reorganization. Any action against Mr. Foti for garnishments and or collection of pre-petition guarantees or debts necessarily distracts him from the task of reorganization;" (ix) "...the collection actions are subject to an affirmative defense – the extinction of Defendants' liability– which hinges on this court's decision on whether First Bank lost its secured status. Hence the collection actions should be stayed, pending the adjudication of the controversy surrounding First Bank's secured status;" (x) the "unusual circumstances" present in this case supporting the position that the provisions of the automatic stay should be made extensive to Mr. Foti are the following; (a) Mr. Foti's identity with the Debtor and his responsibility for formulating and possibly funding a plan of reorganization; (b) " [i]n In re Lazarus [Burman Assoc., 161 B.R. at 897-898] [the Court] held that individuals who were responsible for both operating and procuring capital for the debtor entity were protected by the automatic stay despite the fact that the individuals signed personal guarantees to a

creditor of the debtor;" (c) "[i]n In re Lazarus [Burman Assoc., 161 B.R. at 895-896] as here, the founding principals of the debtor had signed personal guarantees with some of the creditors of the debtor. The principals were in control of the debtors' operations and intended to contribute or solicit funding for the debtor entity in order to facilitate reorganization;" (d) "[i]n In re Lazarus [Burman Assoc., 161 B.R. at 894], the principals had entered into explicit agreement with creditors making themselves solely and personally liable for the debts of the debtor. Indeed the principals in Lazarus agreed to payment 'without any defense' in case the debtor defaulted;" (e) "[d]espite these personal guarantees, and despite agreeing to a term waiving 'any defense,' the Court in Lazarus, [161 B.R. at 899] held that the protections of the automatic stay covered the principals because 'any adverse action against the [principal founders] would impede the non-debtor from injecting funds into the debtor and detract from the invaluable time and attention the non-debtor third party would otherwise devote to the reorganization effort;" (f) "[h]ere, an action by Debtor's creditor, First Bank, is virtually an action against the Debtor;" (g) if First Bank's suit against the Defendants were allowed to proceed and if successful, any judgment against them and/ or judicial lien against Mr. Foti and Mrs. Pagan's assets would limit the funds available for the payment of other creditors pursuant to the plan; and (h) "Mr. Foti's knowledge of the local marketplace, rental agreements, consumer buying patterns and other information is unique. This knowledge, along with Mr. Foti's position as long-time chief executive of Debtor, makes him uniquely suited to guide Debtor through the reorganization process." (Docket No. 4).

Contrary to the Defendants, First Bank argues that they have failed to establish "unusual circumstances" that would warrant the extension of the automatic stay to a non-debtor third party pursuant to 11 U.S.C. §362(a). First Bank also contends that the Defendants have also failed to meet their burden of satisfying the requirements for injunctive relief under 11 U.S.C. §105. Based on these arguments First Bank requests that the Defendant's counterclaim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state claims upon which relief can be granted.

First Bank contends that there is a lack of identity between the Debtor and Defendants because its claims against the Defendants in the state court action are pursuant to the guarantee agreements by which the Defendants are jointly and severally liable to First Bank for Debtor's non-compliance

27

with the obligations under the credit agreement, and First Bank may file a claim against Defendants without including Debtor as a defendant to the complaint.

First Bank also pleads that the state court action will not have an adverse impact on the Debtor's reorganization process due to the following; (i) Defendants limit to assert that the state court action will affect Mr. Foti's time and efforts in Debtor's reorganization process without providing the underlying facts on which they rely to make such an assertion. Defendants do not include the amount of time Mr. Foti dedicates to Debtor's operations and possible reorganization or the amount of time Mr. Foti has diverted to deal with the state court actions; (ii) "...Mr. Foti has advanced Debtor $400,000 in loans. Nevertheless, this was done as an initial effort for Debtor to obtain financing from other third parties, such as Preferred Credit, Inc. ("Preferred"). The latter has subscribed with Debtor a contract through which Preferred will purchase from Debtor consumer sales contracts that will increase Debtor's liquidity;" (iii) Debtor is currently under negotiations with American Enterprises International, Inc., to provide an additional source of funds through the purchase of the consumer sales contracts; (iv) "...contrary to what is stated by Defendants, the financial cost to Mr. Foti personally in defending the [s]tate [c]ourt [a]ctions will not have an adverse effect on Debtor's reorganization given the existence of post-petition financing obtained from third parties, other than Mr. Foti, that will provide Debtor the funds for a reorganization plan;" (v) "[t]he fact is that while Mr. Foti purports that defending himself from the [s]tate [c]ourt [a]ctions will consume time and efforts that otherwise can be dedicated to assisting in Debtor's reorganization, Defendants have found the time to dedicate to other merit less actions filed against the Bank during Debtor's bankruptcy proceedings, such as the appeal and adversary proceeding based on the validity of the Bank's security interest;" and (vi) Defendants fail to provide the basis for the extension of the automatic stay to Mrs. Pagan and the conjugal partnership (Docket No. 14).

This court finds that Mr. Foti's allegations are insufficient to establish "unusual circumstances" which consist of establishing that Mr. Foti and the Debtors "enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor;" or that the "third party action will have an adverse impact on the debtor's ability to accomplish reorganization." Mr. Foti and Mrs. Pagan argue that in the instant case "unusual circumstances" are present since an action

against the Defendants is virtually an action against the Debtors because any judgment against Mr. Foti and Mrs. Pagan's assets would limit the funds available for the payment of other creditors pursuant to the plan. Defendants also argue that litigation regarding the Defendants personal guarantees will only lead to waste in the form of litigation costs and disincentive to fund the plan and that any time Mr. Foti spends in consulting with lawyers and considering strategy distracts Mr. Foti from assisting in the Debtor's reorganization. This court is unable to conclude that a personal guarantee collection action and a judgment against Mr. Foti and Mrs. Pagan is tantamount to an action against the Debtors because pursuant to paragraph 8 of the personal guarantee documents, the guarantors have expressly waived their rights to claim the reduction of the liability under the personal guarantee, and any claim, set-off or counterclaim against IHP and HDI regarding any liability of HDI and IHP to the guarantors. The guarantors also waived the right to compete in any bankruptcy or insolvency proceedings with First Bank or have any right to be subrogated to First Bank. The Defendants support most of their arguments on the findings of In re Lazarus Burman Assoc., which were based solely on a motion for injunctive relief under 11 U.S.C §105(a) to stay a creditor's state court action against the principals of a corporation. The Court in In re Lazarus Burman Assoc., cited the case of In re Otero Mills, Inc., 21 Bankr. 77 (Bankr. D.N.M. 1982) to support its position that; "[t]he District Court further stated that contribution of funding to the Debtor's reorganization alone could provide the basis for the issuance of an injunction. See Third Eighty-Ninth, 138 Bankr. at 147. See also In re Otero Mills, Inc., 21 Bankr. 777 (Bankr. D.N.M. 1982); aff'd, 25 Bankr. 1018 (D.N.M. 1982)" In re Lazarus Burman Assoc., 161 B.R. at 899. The Court in In re Lazarus Burman Assoc., also stated; "In Otero Mills, the bankruptcy court permanently enjoined the bank from executing or otherwise collecting on its state court judgment against the president of the debtor, notwithstanding that his liability arose out of his guaranty of the debtor's notes, as distinguished from the situation in the present case where the claim against the [p]rincipals arose out of their direct liability under their [n]ote. By focusing on the principal's intention to contribute to Otero's reorganization, the court premised jurisdiction, and the propriety of a §105 injunction on the general goal of improving the debtor's chance of reorganization." Id. at 899. This court in the case of In re Codfish Corp., stated the following; "[t]his court agrees with the decision by Bankruptcy Judge James E. Yacos in Matter of

Supermercado Gamboa, Inc., 68 B.R. 230, 234 (Bankr. P.R. 1986) that the test set forth in In re Otero Mills, Inc., *supra,* is too relaxed. A mere adverse effect is not sufficient to invoke the court's injunctive power under 11 U.S.C. §105(a)." In re Codfish Corp., 97 B.R. at 135.

Debtors' Consolidated Disclosure Statement and the Plan of Reorganization were filed on September 28, 2012 (Docket Nos. 283 & 284) and the proposed Plan of Reorganization was subsequently amended on March 20, 2013 (Docket No. 417).  Debtors' Disclosure Statement discloses that the Debtors thus far have obtained post-petition financing from their president up to the amount of $250,000 as an unsecured loan and up to $500,00 secured with super priority (Docket No. 283, pg. 10). Pursuant to Debtors' Amended Proposed Plan of Reorganization, Mr. Andrew Bert Foti is a secured creditor with a super priority rank placed in class II,  which includes all post-petition, secured loans with a super priority rank made by debtor's president up to the amount of $500,000. The court allowed post-petition financing by Mr. Foti up to the amount of $500,000 and up to this date (March 20, 2013), the debt to Mr. Foti under this class amounts to $509,570.20 (Docket No. 417, pg. 7). Article XIII -Means of Execution of the Plan and Management of Debtor of Debtors' Disclosure Statement states that; "[f]unding of the plan will be from the operations of the business, collection of accounts receivables, proceeds from litigation and Debtors' president contribution, as needed." (Docket No. 283, pg. 31). Thus, in conformity with the Disclosure Statement, the funding of the plan will be provided from various sources and Mr. Foti's contributions to fund the plan will be as needed (meaning that the same are not essential and thus would create an adverse effect towards Debtors' reorganization). Moreover, this court in In re Bora Bora, Inc., stated that it "...agrees with Judge Hillman in the case of M.J.H. Leasing, Inc., when he stated that the debtor's principal intention to devote personal assets to the reorganization of the debtor does not automatically shield him from suit in his personal obligations. M.J.H. Leasing, Inc., 328 B.R. at 367." In re Bora Bora, Inc., 424 B.R. at 25.

The court concludes that Defendants' argument regarding the litigation pertaining to the foreclosure of personal guarantees will only generate litigation costs and will distract Mr. Foti from assisting in the Debtors' reorganization process fail to establish that this collection action brought by First Bank against various guarantors is so complex that it will actually affect the Debtors, their

operation and their reorganization due to Mr. Foti's distraction. The court notes that the allegations fail to plead with detail and particularity why the business is so complicated that it requires the undivided attention of Mr. Foti for the same to run smoothly. The court also finds that the limited scope of the removed state court action is unlikely to consume significant portions of Mr. Foti's time and energy and that the time pressures of this foreclosure of personal guarantees action do not constitute "unusual circumstances" that would justify the extension of the automatic stay provisions to Mr. Foti.

This court finds that the Defendants have failed to establish that the instant case presents such "unusual circumstances" that warrant the extension of the automatic stay provisions to a non-debtor third party.

Conclusion

In view of the foregoing, this court makes the following findings: (1) that it has no "related to" jurisdiction pursuant to 28 U.S.C. §1334(b) over this particular removed state court action and thus the same must be remanded in conformity with 11 U.S.C. §1447(c); (2) the Defendants' counterclaim is not the proper procedural mechanism to request the extension of the provisions of the automatic stay to non-debtors since the same constitutes an action for injunctive relief and must be initiated in a separate adversary proceeding; (3) the allegations in the counterclaim and in Mr. Foti and Mrs. Pagan's opposition to First Bank's motion to dismiss the counterclaim fail to establish that the Debtors would suffer irreparable injury if the state court collection action against them is allowed to proceed; thus Defendants request for injunctive relief under 11 U.S.C. §105(a) is denied; and (4) the Defendants have failed to establish that the instant case presents such "unusual circumstances" that warrant the extension of the automatic stay provisions to a non-debtor third party.

In view of the foregoing, the court hereby remands case number KAC2012-0446.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge